UNITED STATES of America,

v.

David HALL, Defendant.

No. 5:08–CR–174.

United States District Court,
N.D. New York.

Sept. 23, 2008.

Lisa A. Peebles, Esq., Office of the Federal Public Defender–Syracuse Office, Districts of Northern New York & Vermont, Syracuse, NY, for Defendant.

Andrew T. Baxter, Office of the United States Attorney, Lisa M. Fletcher, Esq., Assistant United States Attorney, of counsel, Syracuse, NY, for the United States of America.

## *MEMORANDUM–DECISION and ORDER*

DAVID N. HURD, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION .................................................612

II. BACKGROUND.....................................................613
 A. Facts.......................................................613
 B. The Federal Duty to Register as a Sex Offender ...........613
 C. The Federal Criminal Penalty for Failure to Register......614

III. DISCUSSION.....................................................614
 A. Motion to Dismiss..........................................614
 1. The Non–Implementation of SORNA in New York and Virginia ..........614
 2. The *Ex Post Facto* Clause .........................615
 3. The Due Process Clause..............................616
 4. The Tenth Amendment.................................616
 5. The Non–Delegation Doctrine.........................617
 6. The Commerce Clause ................................618
 a. 18 U.S.C. § 2250(a) ..............................619
 b. 42 U.S.C. § 16913 ...............................619
 B. Cross–Motion for Discovery ................................622

IV. CONCLUSION.....................................................623

## I. *INTRODUCTION*

Defendant David Hall ("defendant") is charged with one count of traveling in interstate commerce and thereafter knowingly failing to register and update his sex offender registration in violation of 18 U.S.C. § 2250(a).

Defendant moves to dismiss the Indictment. The United States of America ("Government") opposes and moves for reciprocal discovery. Oral argument was heard on August 8, 2008.

## II. BACKGROUND

### A. Facts

On August 12, 2004, defendant was sentenced in Cayuga County Court to ten years probation after pleading guilty to Rape in the Third Degree in violation of New York State Penal Law, § 130.25. Defendant again pleaded guilty to a subsequent offense of Rape in the Third Degree on May 25, 2006 and was sentenced to one year imprisonment.

Defendant was required to register as a sex offender in New York and keep his registration current by way of regularly updating his registration and notifying the New York Sex Offender Registry of any change of address. Defendant completed two sex offender registration forms dated August 13, 2004 and June 13, 2006, respectively. Both registration forms indicate defendant was to be given a copy of the forms and notified of his obligation to continually register as a sex offender.

On July 11, 2006, defendant filed a Sex Offender Change of Address Form, thereby notifying the Registry of his new residence in Moravia, New York. An annual verification form was sent to defendant's new address on June 13, 2007, but the form was returned by the U.S. Post Office. Consequently, the New York Department of Criminal Justice Services notified the Moravia Village Police Department that defendant had not complied with his annual address verification.

Defendant's whereabouts were unknown until he applied for public assistance benefits in February of 2008. On February 26, 2008, a Social Services Investigator for the Cayuga County Department of Health and Human services interviewed defendant regarding his application for benefits. During the interview, defendant stated he had been living and working in Virginia before moving back to New York on February 22, 2008. An investigator with the Virginia Sex Offender Registry confirmed that defendant failed to register as a sex offender in the state of Virginia, and there is no record of defendant having updated his registry upon resuming his residence in New York.

On April 3, 2008, the Government filed a complaint charging defendant with failing to register under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16913, after traveling in interstate commerce in violation of the federal criminal penalty statute, 18 U.S.C. § 2250(a).

On April 9, 2008, a grand jury indicted defendant on one count of knowingly failing to update his sex offender registration after traveling in interstate commerce as required by SORNA and in violation of 18 U.S.C. § 2250(a).

### B. The Federal Duty to Register as a Sex Offender

SORNA provides: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). A "sex offender" is defined as any individual who is convicted of a sex offense under either state or federal law. 42 U.S.C. § 16911(1). Following a change of a sex offender's name, residence, employment, or student status, SORNA requires a sex offender notify the state in which he lives of such change(s). 42 U.S.C. § 16913(c).

Congress delegated to the Attorney General the authority to determine the applicability of SORNA to sex offenders convicted before the statute's enactment or

prior to the implementation of the statute in a particular jurisdiction. 42 U.S.C. § 16913(d). On February 28, 2007, the Attorney General exercised this authority and designated SORNA applicable to sex offenders convicted of sex offenses before SORNA was enacted. 28 C.F.R. § 72.3 (2007). Further, on May 30, 2007, the Attorney General issued the National Guidelines for Sex Offender Registration and Notification and explained that SOR-NA applies "to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA *or prior to particular jurisdictions' incorporation of the SORNA requirements* into their [sex offender registry] programs." 72 Fed.Reg. 30228 (May 30, 2007) (emphasis added).

### C. The Federal Criminal Penalty for Failure to Register

While § 16913 creates a sex offender's duty under federal law to register with state sex offender registries and continually update one's registration, 18 U.S.C. § 2250(a) serves as the enforcement mechanism for a sex offender's duty to register. Pursuant to § 2250(a), any sex offender who is required to register under SORNA and either was convicted of a federal sex offense or was convicted of a state sex offense and traveled in interstate commerce faces up to ten years in prison for knowingly failing to register or update his registration.

## III. DISCUSSION

### A. Motion to Dismiss

Defendant moves to dismiss the Indictment on several grounds. First, defendant alleges that SORNA does not apply to him because New York and Virginia have not implemented the law. Second, defendant contends that punishment under the federal criminal statute would violate the *Ex Post Facto* clause of the Constitu-

tion. Third, defendant argues that punishment under 18 U.S.C. § 2250(a) violates his due process rights because he is unable to comply with SORNA. Fourth, defendant submits that SORNA violates the Tenth Amendment as an impermissible encroachment upon the states' sovereignty. Fifth, defendant contends SORNA violates the non-delegation doctrine. Finally, defendant argues that Congress lacks constitutional authority to compel individuals convicted of purely local sex offenses to register as sex offenders.

### 1. The Non–Implementation of SOR-NA in New York and Virginia

Defendant moves to dismiss the Indictment on the ground that SORNA does not apply to him because neither New York nor Virginia have implemented SORNA. Defendant contends that the Attorney General has not issued a rule making SORNA applicable in jurisdictions that have yet to implement the statute's requirements into their own sex offender registries. Further, defendant explains that both states lack procedures for the collection and dissemination of the information required under SORNA. Defendant argues that New York and Virginia are unable to fulfill SORNA's registration and notification requirements, and consequently, that he cannot be held criminally liable for failure to register with either states' sex offender registries as required by SORNA.

■ Although New York and Virginia have yet to implement SORNA, defendant nonetheless has a duty under federal law to maintain his sex offender registration with the states in which he resides. *See United States v. Van Buren,* No. 3:08–CR–198, 2008 WL 3414012, at *7 (N.D.N.Y. Aug. 8, 2008); *United States v. Senogles,* 570 F.Supp.2d 1134, 1157–59 (D.Minn. 2008); *United States v. Gould,* 526

F.Supp.2d 538, 542 (D.Md.2007). As already explained, the Attorney General was vested with the authority to determine the applicability of SORNA to sex offenders convicted of sex offenses either prior to the enactment of SORNA or prior to the implementation of SORNA in a particular jurisdiction.[1] *See* 42 U.S.C. § 16913(d). Despite defendant's arguments to the contrary, the Attorney General has specified that SORNA applies to sex offenders whose conviction of a sex offense predates the enactment of SORNA, regardless of whether a jurisdiction has implemented SORNA's requirements. *See* 28 C.F.R. § 72.3 (2007); *see also* 72 Fed.Reg. 30228 (May 30, 2007).

According to his own statement during an eligibility interview for public assistance, defendant's failure to register as required by SORNA occurred in February of 2008 after traveling from Virginia to New York. Defendant is known to have been non-compliant with New York and Virginia registration requirements from June 13, 2007 to on or about February 26, 2008. The offense for which defendant is charged therefore occurred after the Attorney General specified SORNA's applicability. As a result, SORNA applies to defendant, and he may be subject to criminal charges under 18 U.S.C. § 2250(a) for failing to maintain his registration after traveling in interstate commerce.

## 2. *The Ex Post Facto Clause*

■ Alternatively, defendant argues that punishing him for failing to register under SORNA violates the *Ex Post Facto* Clause of the United States Constitution. The constitutional protection against *ex post facto* laws prohibits the punishment of individuals for acts that were legal when performed. U.S. CONST. art. I, § 9, cl. 3; *Collins v. Youngblood*, 497 U.S. 37, 42, 110

S.Ct. 2715, 111 L.Ed.2d 30 (1990); *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Additionally, the Supreme Court has explained that a statute violates the *ex post facto* clause if it imposes a greater punishment upon a criminal defendant than when he either committed the crime or was convicted of the underlying offense. *Youngblood*, 497 U.S. at 42, 110 S.Ct. 2715.

■ Defendant's *ex post facto* challenge incorrectly relies upon the notion that he is being punished for his state law sex offense—an offense which was committed well before SORNA was enacted. To the contrary, "§ 2250 punishes an individual for traveling in interstate · commerce and failing to register [as a sex offender]. The statute does not punish an individual for previously being convicted of a sex crime." *United States v. May*, 535 F.3d 912, 920 (8th Cir.2008).

Although defendant also cites Supreme Court precedent illustrating the importance of fair notice and governmental restraint when evaluating whether relief is warranted under the *Ex Post Facto* Clause, *Weaver*, 450 U.S. at 30, 101 S.Ct. 960, the Court explained that the *Ex Post Facto* Clause offers protection when criminal punishment "is both retrospective and more onerous than the law in effect on the date of the offense." *Id.* at 30–31, 101 S.Ct. 960. Defendant's *ex post facto* challenge must fail because he has been indicted for an offense that occurred after the relevant statutes and rules were enacted. Defendant allegedly violated § 2250(a) when he traveled in interstate commerce between Virginia and New York and failed to update his sex offender registration with either state's sex offender registry. Rather than prosecute defendant for an

---

1. Defendant has challenged the constitutionality of this delegation of power as a violation of the non-delegation doctrine. This challenge is addressed later in the opinion.

offense he committed before the criminal penalty statute was enacted, the Indictment accuses defendant of engaging in conduct that was already illegal prior to defendant's actions. Therefore, defendant's ex post facto challenge is rejected.

### 3. The Due Process Clause

Defendant alternatively argues that to subject him to criminal liability for failing to register under SORNA violates his due process rights because he is unable to comply with SORNA's registration requirements. Defendant contends he is unable to comply with SORNA because the states in which he resided have yet to implement the statute and therefore lack the necessary mechanisms for defendant to comply with the federal registration requirements.

■ Although defendant correctly asserts it is a violation of one's due process rights to criminalize an individual's failure to do something that is impossible, see United States v. Dalton, 960 F.2d 121, 124 (10th Cir.1992), defendant incorrectly contends that compliance with SORNA is impossible because of a state's failure to implement the statute's requirements. See United States v. Fuller, No: 5:07–CR–462, 2008 WL 2437869, at *3 (N.D.N.Y. June 13, 2008) (holding that New York's failure to implement SORNA did not prevent the defendant from fulfilling his duty to register under federal law because he could have submitted the required information to the state registry); United States v. Adkins, No: 1:07–CR–59, 2007 WL 4335457, at *6 (N.D.Ind. Dec. 7, 2007) (finding no due process violation despite the states' failure to implement SORNA so long as both states maintained their own sex offender registries).

■ Defendant could have fulfilled his obligation to register as a sex offender under SORNA by providing the Virginia and New York sex offender registries with the required information upon changing his residence. Defendant's contention that it was impossible for him to comply with SORNA is therefore inaccurate. Additionally, defendant's conduct for which he is charged occurred after § 2250 was enacted, thereby providing him with notice of the criminal penalty for failing to register under SORNA. For these reasons, defendant's due process challenge is rejected.

### 4. The Tenth Amendment

■ Defendant argues SORNA's registration requirements should be invalidated as an unconstitutional encroachment upon state sovereignty in violation of the Tenth Amendment to the Constitution. The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. Defendant's argument rests upon the notion that the federal government may not commandeer state officials for the purpose of enacting or administering a federal statute, Printz v. United States, 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). The essence of defendant's argument is that SORNA represents a Congressional effort to compel local and state law enforcement to aid in the registration of sex offenders pursuant to federal law.

Defendant's argument has been uniformly rejected by each court to consider the Tenth Amendment claim as applied to SORNA. United States v. Zuniga, No. 4:07–CR–3156, 2008 WL 2184118, at *19 (D.Neb. May 23, 2008) (citing United States v. Hacker, No. 8:07–CR–243, 2008 WL 312689, at *3 (D.Neb. Feb. 1, 2008)); see also Gould, 526 F.Supp.2d at 549; United States v. Pitts, No. 07–CR–157–A, 2007 WL 3353423, at *9 (M.D.La. Nov. 7, 2007).

Particularly detrimental to defendant's argument is that he cannot show that New York or Virginia have made any changes to their state sex offender registries in response to SORNA. In *Printz*, the Supreme Court struck down a federal law because it required local law enforcement officials to conduct background checks of customers seeking to purchase handguns. 521 U.S. at 935, 117 S.Ct. 2365. Unlike the law enforcement officials in *Printz*, however, state sex offender registry officials have not been required to do anything they were not already required to do under their own state laws, i.e., collect the registration information for individuals convicted of sex offenses who are residents of the state.

As a result, defendant is unable to show how Congress commandeered the states' law enforcement officials. *See Zuniga*, 2008 WL 2184118, at *20 (holding defendant's Tenth Amendment challenge to SORNA failed because "Nebraska has not implemented any provision of SORNA, and there is no evidence that Utah has made any changes in response to SORNA."); *United States v. Utesch*, No. 2:07–CR–105, 2008 WL 656066, at *15 (E.D.Tenn. March 6, 2008) (rejecting defendant's Tenth Amendment claim because neither of the states in which defendant had lived changed their registration requirements after SORNA's enactment). Therefore, defendant has failed to show an encroachment of federal power upon state sovereignty, and his Tenth Amendment challenge must fail.

### 5. *The Non–Delegation Doctrine*

■ Defendant asserts SORNA violates the non-delegation doctrine because of the breadth of the rulemaking authority delegated to the Attorney General. *See* 42 U.S.C. § 16913(d). Specifically, defendant contends § 16913(d) permits the Attorney General to determine the retroactivity of SORNA's registration requirements in violation of the principle of separation of powers. Further, defendant explains the judiciary's disfavor of retroactive legislation, particularly in the criminal context, *see Fahey v. Mallonee*, 332 U.S. 245, 249, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), and cites the need for a clear indication of Congressional intent before a law may be applied retroactively. *I.N.S. v. St. Cyr*, 533 U.S. 289, 315–16, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Landgraf v. USI Film Products*, 511 U.S. 244, 271, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

■ While Congress is prohibited from transferring its legislative power to another branch of government, *see A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), Congress is nonetheless permitted to enlist the aid of the other branches of government and may delegate some of its authority so long as it provides an "intelligible principle" to the delegated party. *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928). Defendant asserts that § 16913(d) vests the Attorney General with unrestrained and unguided power to determine whether SORNA applies to sex offenders convicted before SORNA's enactment. Section 16913(d) states:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d).

Indeed, when read in isolation from the other subsections of § 16913, subsection (d) appears to grant the Attorney General the power to specify the retroactivity of

the registration requirements under SOR-NA. *United States v. Waybright,* 561 F.Supp.2d 1154, 1171 (D.Mont.2008). However, Congress provided the Attorney General with an intelligible principle within subsection (a). Section 16913(a) states: "A sex offender *shall* register, and keep the registration current, in each jurisdiction where the offender resides . . . ." 42 U.S.C. § 16913(a) (emphasis added). Additionally, SORNA defines a sex offender as "an individual who *was* convicted of a sex offense." 42 U.S.C. § 16911(1) (emphasis added). In light of the general registration provision in § 16913(a) and the definition of sex offender in § 16911(1), the Attorney General was granted limited authority to determine the retroactive application of SORNA's registration requirements to individuals convicted of sex offenses prior to SORNA's enactment. In other words, at the time SORNA was enacted, Congress had already demonstrated its intent for SORNA to apply to all individuals who have ever been convicted of a sex offense, including sex offenders convicted before July 27, 2006. *Waybright,* 561 F.Supp.2d at 1171.

The same argument defendant raises has been consistently rejected by courts across the country. *See, e.g., Van Buren,* 2008 WL 3414012, at *15; *Senogles,* 570 F.Supp.2d at 1151–52; *Gould* 526 F.Supp.2d at 545–46; *United States v. Hinen,* 487 F.Supp.2d 747, 753 (W.D.Va. 2007). Moreover, there are only two instances during which the Supreme Court struck down a law as violative of the non-delegation doctrine, both of which occurred more than seventy years ago. *See A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). The Court's reluctance to use the non-delegation doctrine as a basis for invalidating a delegation of legislative power to other branches of government is indicative of the discretion afforded to Congress when making such delegations. *See Whitman v. Am. Trucking Ass'n,* 531 U.S. 457, 474, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). For these reasons, defendant's argument that SORNA violates the non-delegation doctrine must fail.

### 6. *The Commerce Clause*

Defendant argues 18 U.S.C. § 2250(a) and 42 U.S.C. § 16913 are unconstitutional because Congress lacks the authority to require individuals convicted of state sex offenses to register as sex offenders. Section 2250(a) imposes a federal criminal penalty for an individual's failure to update his sex offender registration as required under SORNA after traveling in interstate commerce. Section 16913 creates a federal duty to register or update one's sex offender registry regardless of whether a sex offender has traveled in interstate commerce.

■ The United States Supreme Court identified three categories of activities Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though they may come only from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce." *United States v. Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The Court further explained that the final category of activities Congress may regulate requires that the regulated activity "substantially affects" interstate commerce. *Id.* at 559, 115 S.Ct. 1624. Four factors are used to determine whether an activity has a substantial effect upon interstate commerce: (1) whether the statute regulates activity that is economic in nature; (2) whether the statute includes a jurisdictional element,

i.e., a limitation of the statute's application to activities having a clear connection with or effect upon interstate commerce; (3) whether there are congressional findings concerning the effect of the regulated activity upon interstate commerce; and (4) whether the nexus between the regulated activity and the substantial effect upon interstate commerce is attenuated. *United States v. Morrison,* 529 U.S. 598, 610–12, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

#### a. *18 U.S.C. § 2250(a)*

■ Defendant argues that § 2250(a) is unconstitutional because it does not fall within the three permissible categories identified by the Supreme Court in *Lopez.* Although defendant concedes § 2250(a) requires an individual travel in interstate commerce before he may be charged with violating the statute, defendant asserts that § 2250(a) is nonetheless invalid because it does not require the defendant travel in interstate commerce with the intent to violate the statute. Defendant warns that upholding statutes such as § 2250(a) will permit Congress to create federal criminal offenses for a broad range of conduct already proscribed by state law so long as interstate travel is an element of the federal statute.

Unlike the statutes considered in *Lopez* and *Morrison,* § 2250(a) falls within the first and second categories of activity Congress may regulate under the Commerce Clause because it requires sex offenders travel in interstate commerce before being held criminally liable. *See May,* 535 F.3d at 921–22; *Van Buren,* 2008 WL 3414012, at *12; *Waybright,* 561 F.Supp.2d at 1160–61; *Gould,* 526 F.Supp.2d at 547. Al-

though other federal criminal statutes have been upheld on the ground that they require a direct link between the criminal conduct and the interstate travel,[2] the constitutionality of § 2250(a) does not entirely depend upon whether the statute requires a connection between the interstate travel element and a sex offender's failure to update his registry. *Waybright,* 561 F.Supp.2d at 1161. Rather, Congress may regulate "persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624. In light of the language in *Lopez,* defendant's argument that Congress lacks the authority to regulate individuals convicted of purely state sex offenses is misguided because Congress may safeguard against conduct that is wholly intrastate so long as the federal statute extends only to individuals who travel in interstate commerce. Therefore, defendant's challenge to § 2250(a) is rejected.

#### b. *42 U.S.C. § 16913*

Defendant also argues Congress lacks the constitutional authority to require individuals convicted of state local offenses to register as sex offenders. Defendant's argument rests upon the premise that § 2250(a) extends only to those who are required to register as sex offenders pursuant to SORNA. 18 U.S.C. § 2250(a)(1). Defendant asserts that if SORNA constitutes an invalid use of Congress's authority under the Commerce Clause, he may not be convicted under § 2250(a) because the duty to register as a sex offender pursuant to SORNA is a required element of the federal criminal statute. *See Id.*

---

**2.** For example, the Supreme Court upheld a federal statute making it illegal to transport persons in interstate commerce with the intent that such persons engage in prostitution. *Hoke v. United States,* 227 U.S. 308, 321, 33 S.Ct. 281, 57 L.Ed. 523 (1913). Congress also validly created a federal offense for committing robbery that obstructs or affects commerce or the movement of a commodity in commerce. *United States v. Williams,* 342 F.3d 350 (4th Cir.2003).

Section 16913 raises greater constitutional concern than § 2250(a) because it lacks a jurisdictional element restricting its application to individuals who travel in interstate commerce. Unlike § 2250(a), § 16913 confers a duty upon all sex offenders, regardless of whether they travel in interstate commerce or whether convicted of state or federal sex offenses, to register and update their registration within three days of any change of name, residence, employment, or student status. While the vast majority of courts to consider the constitutionality of SORNA have upheld the statute as a valid exercise of Congress's power under the Commerce Clause, *see, e.g., May*, 535 F.3d at 922; *Van Buren*, 2008 WL 3414012, at *12–13; *Senogles*, 570 F.Supp.2d at 1146–50; *United States v. Trent*, 568 F.Supp.2d 857, 862–63 (S.D.Ohio 2008), defendant correctly asserts that a statute may not be given effect if it is predicated upon another statute improperly enacted by Congress. *Van Buren*, 2008 WL 3414012, at *10 (citing *Morrison*, 529 U.S. at 604, 120 S.Ct. 1740; *Lopez*, 514 U.S. at 551, 115 S.Ct. 1624).

A conviction under § 2250(a) undisputably rests, in part, upon a defendant's obligation to register as a sex offender under § 16913. *See* 18 U.S.C. 2250(a)(1). Many of the courts that have upheld SORNA under the Commerce Clause interpret § 16913 and § 2250(a) "as interrelated components of the larger whole of SORNA sufficient to overcome any deficiencies when viewing § 16913 in isolation." *Van Buren*, 2008 WL 3414012, at *12; *see also, United States v. Ditomasso*, 552 F.Supp.2d 233, 246–47 (D.R.I.2008). Such an interpretation ignores the language of § 16913, however. Section 16913 imposes a federal duty for all individuals convicted of a sex offense to register or update their sex offender registration within three days of any change of name, residence, employment, or student status. 42 U.S.C. §§ 16913(a)-(c). The federal law extends to all sex offenders, regardless of whether they travel in interstate commerce or were convicted of a federal or state sex offense. *Id.* For example, under § 16913, an individual convicted of a state sex offense while living in Buffalo, New York would have an obligation under federal law to update his sex offender registration upon moving to Albany, New York. Taken even further, the same individual would have a federal obligation to update his sex offender registry if he remained in Buffalo but simply moved into a new home across the street from his previous residence. Presently, federal law requires sex offenders update their registration after any change of their employment or student status even if they never have or never intended to travel across state lines. *See* 42 U.S.C. 16913(c).

An alternative interpretation must fail because of the clear language of § 16913. Although some courts rely on Congress's intent to create a national database for tracking sex offenders across interstate lines, *Van Buren*, 2008 WL 3414012, at *1; *Ditomasso*, 552 F.Supp.2d at 244 ("[SORNA] was intended to close loopholes, especially to prevent sex offenders from being lost to tracking efforts as they travel from state to state.") (citing 152 CONG. REC. H5705, 8013 (2006)), § 16913 nonetheless imposes a federal duty upon sex offenders who never travel in interstate commerce. Some courts uphold the statute only after adding new language to § 16913 themselves. For instance, the *Ditomasso* Court explained, "SORNA requires that the defendant register within three days of *traveling in interstate commerce.*" 552 F.Supp.2d at 247 (emphasis added) (citing 42 U.S.C. § 16913(c)). Despite the court's citation to § 16913(c) specifically and not § 2250(a), nowhere in § 16913 do the words "traveling in interstate commerce" appear. Section 16913 in its entirety makes no reference to travel across inter-

state lines or any of the channels of interstate commerce. The section completely lacks any jurisdictional element or restriction to sex offenders traveling between the states.

Whether or not § 16913 and § 2250(a) are read as "interrelated components" of SORNA, § 16913 nonetheless confers a duty under federal law upon sex offenders to maintain their registration even if they do not travel in interstate commerce. Had Congress intended otherwise, it could have easily limited the scope of § 16913 to sex offenders convicted of federal sex offenses or who travel across state lines as it did with § 2250(a). The jurisdictional element of § 2250(a) does not remove a sex offender's duty under § 16913 to update his registration after he changes jobs or graduates from college. Rather, any sex offender who fails to update his registration after changing residences, jobs, or student status would be in violation of § 16913.

As a regulation of all sex offenders, § 16913 neither regulates the use of the channels of interstate commerce nor the instrumentalities or persons in interstate commerce. Accordingly, § 16913 "cannot be upheld under either of the first two categories of activity subject to regulation under the Commerce Clause. Instead, if it is to be sustained under the Commerce Clause[,] it must fall within the third *Lopez* category, i.e., regulation of 'activities that substantially affect interstate commerce.'" *Waybright,* 561 F.Supp.2d at 1163 (quoting *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624).

■ An application of the factors used to determine whether regulated activity has a substantial effect upon interstate commerce indicates § 16913 cannot be upheld under the Commerce Clause. First, § 16913 does not regulate activity that is economic in nature. SORNA's stated purpose is "to protect the public from sex offenders and offenders against children."

42 U.S.C. § 16901. The creation of a federal duty to register or update one's registry as a sex offender does not have a connection to commerce and cannot be construed as a regulation of commercial activity. Second, as noted above, § 16913 does not contain a jurisdictional element restricting its application to activities or individuals having a clear connection to interstate commerce. Third, the legislative history of SORNA is devoid of clear congressional findings concerning the effect of sex offender registration upon interstate commerce. *Waybright,* 561 F.Supp.2d at 1165. Finally, notwithstanding the effect, if any, of continually registering sex offenders upon interstate commerce, such an effect is too attenuated to uphold § 16913 as a statute regulating activity that substantially affects interstate commerce. *Id.*

In consideration of the fourth factor for whether a statute regulates activity substantially affecting interstate commerce, the Supreme Court has rejected the argument that violent crime sufficiently affects the national economy so as to uphold a federal criminal statute pursuant to the Commerce Clause. *Lopez,* 514 U.S. at 564, 115 S.Ct. 1624. In *Lopez,* the Government offered a "cost of crime" argument and contended that violent crimes (1) raise insurance costs which are eventually passed onto the general population; (2) make individuals less likely to travel to areas of the country believed to be unsafe; and (3) in some cases, hinder the educational process. *Id.* at 563–64, 115 S.Ct. 1624. In response, the Court warned:

Under the theories that the Government presents in support of [the federal statute], it is difficult to perceive any limitation on federal power, even in areas such as criminal law enforcement or education where States historically have been sovereign. Thus, if we were to accept the Government's arguments, we

are hard pressed to posit any activity by an individual that Congress is without power to regulate.

*Id.* at 564, 115 S.Ct. 1624.

In light of the *Lopez* Court's language, the Government may not contend that the registration of sex offenders is strongly connected to a substantial effect upon interstate commerce. Indeed, even the Government in *Waybright* recognized the constitutional defect of relying upon the Commerce Clause for upholding § 16913 and conceded during oral argument that the Commerce Clause alone did not present Congress with a sufficient grant of authority to enact § 16913. *Waybright,* 561 F.Supp.2d at 1164. An examination of the relevant precedent demonstrates that the conduct regulated by § 16913 does not fall within any of the three categories of activity that Congress may regulate pursuant to its Commerce Clause power.

 Alternatively, some district courts have upheld § 16913 under Congress's spending power. *See United States v. Cardenas,* No. 07–CR–80108, 2007 WL 4245913 (S.D.Fla. Nov. 29, 2007); *see also United States v. Pitts,* No. 07–CR–157–A, 2007 WL 3353423 (M.D.La. Nov. 7, 2007). Congress may permissibly use its spending power to motivate states to implement federal regulations or enact specific statutes. *South Dakota v. Dole,* 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). Based on this constitutional grant of authority, the *Cardenas* Court upheld § 16913. *Cardenas,* 2007 WL 4245913, at *12.

A constitutional issue exists, however, because *Cardenas* is at odds with the extensive case law holding SORNA applicable to sex offenders despite the failure of every state in the country to implement SORNA's requirements. *See, e.g., Van Buren,* 2008 WL 3414012, at *7; *Senogles,* 570 F.Supp.2d at 1157–59; *Gould,* 526 F.Supp.2d at 542. *Cardenas* determined

that § 16913 merely set forth the conditions for compliance with SORNA and required states to impose criminal penalties themselves for the failure to register. *Cardenas,* 2007 WL 4245913, at *12; *see also* 42 U.S.C. § 16913(e). Quite specifically, the *Cardenas* Court upheld § 16913 because it interpreted the statute as nothing more than encouragement for the states' enactment of the SORNA program and explained that "it remains the prerogative of the States to implement SORNA." *Cardenas,* 2007 WL 4245913, at *12.

The reasoning employed by the *Cardenas* Court is flawed because § 16913 clearly imposes a condition upon individuals rather than the states. *Waybright,* 561 F.Supp.2d at 1167–68. Any other analysis is inconsistent with the notion that sex offenders are required to register under SORNA prior to the states' implementation of the statute and would otherwise allow the Government to make irreconcilable arguments in favor of SORNA's constitutionality and its application to sex offenders. As it currently stands, SORNA imposes a duty under federal law upon all sex offenders to register and maintain one's sex offender registration. Therefore, § 16913 cannot be upheld as a proper exercise of Congress's spending power.

Because § 16913 is not a valid exercise of Congressional authority under either the Commerce Clause or Congress's spending power, the federal duty to register as a sex offender under § 16913 is unconstitutional. It then follows that a conviction under § 2250(a) is invalid because the criminal penalty statute demands the Government prove defendant was required to register under § 16913. For this reason, defendant's motion to dismiss the Indictment will be granted.

### B. *Cross–Motion for Discovery*

The Government moves for discovery of evidence the defendant intends to intro-

duce during his case in chief pursuant to Federal Rule of Criminal Procedure 16(b)(1). In light of the decision to grant defendant's motion to dismiss the Indictment, the Government's cross-motion will be denied as moot.

## IV. CONCLUSION

Defendant has put forth a number of arguments, many of which must be rejected. First, SORNA applies to defendant despite the states' failure to implement SORNA's requirements because of the Attorney General's use of his rule making authority. Second, holding defendant criminally liable under SORNA does not violate the *Ex Post Facto* Clause of the United States Constitution because the conduct for which defendant has been charged—failing to update his sex offender registration after traveling in interstate commerce—occurred after SORNA was enacted. Third, SORNA does not violate defendant's due process rights because defendant could have complied with SORNA's registration requirement by providing the Virginia and New York sex offender registries with the required information. Fourth, SORNA does not violate the Tenth Amendment to the Constitution because no state has made changes in response to SORNA and therefore Congress has not commandeered state law enforcement officials. Fifth, SORNA does not violate the non-delegation doctrine because Congress provided the Attorney General with an intelligible principle and sufficiently limited the Attorney General's rule making authority.

SORNA's fatal flaw, however, is that Congress exceeded its power under the Commerce Clause when it created a federal duty for all sex offenders to update their registration pursuant to § 16913. Congress may not require sex offenders convicted of state sex offenses and who do not travel in interstate commerce to update their sex offender registration after chang-ing their name, address, employment, or student status. The duty to register as a sex offender pursuant to § 16913 is a predicate for a conviction under § 2250(a), and therefore, the constitutional defect of § 16913 taints § 2250(a). Accordingly, defendant's Commerce Clause argument is valid.

Therefore, it is

ORDERED that:

1. Defendant's motion is GRANTED;

2. The Government's motion is DENIED; and

3. The Indictment is DISMISSED.

IT IS SO ORDERED.