08-5561-cr, 08-6004-cr
USA v. Guzman, USA v. Hall

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: September 14, 2009                       Decided: January 7, 2010
                                          Amended: January 8, 2010)

Docket Nos. 08-5561-cr, 08-6004-cr

_____

UNITED STATES OF AMERICA,

*Appellant*,

−v.−

JESUS MANUEL GUZMAN,

*Defendant-Appellee.*

_____

UNITED STATES OF AMERICA,

*Appellant*,

−v.−

DAVID HALL,

*Defendant-Appellee.*

_____

Before:

MINER, STRAUB, and WESLEY, *Circuit Judges*.

Appeals from orders of the United States District Court for the Northern District of New York (Hurd, *J.*), entered on (1) September 23, 2008, dismissing the indictment in *United States v. Hall*; (2) October 17, 2008, dismissing the superseding indictment in *United States v. Guzman*; and (3) December 4, 2008, denying the government's motion for reconsideration in *United States v. Hall*. The basis for each order was that the requirement of the Sex Offender Registration and Notification Act that Appellees register as convicted sex offenders and keep their registrations up to date, 42 U.S.C. § 16913, exceeds congressional power under the Commerce Clause. The district court rejected all of Appellees' other arguments in support of dismissal.

REVERSED and REMANDED.

---

BRENDA K. SANNES, Assistant United States Attorney, *for* Andrew T. Baxter, Acting United States Attorney for the Northern District of New York, Syracuse, New York (Lisa M. Fletcher, Assistant United States Attorney, *of counsel*), *for Appellant United States of America*.

JAMES P. EGAN, Assistant Federal Public Defender, *for* Alexander Bunin, Federal Public Defender for the Northern District of New York, Syracuse, New York (Lisa A. Peebles, First Assistant Federal Public Defender, Melissa A. Tuohey, Assistant Federal Public Defender, *of counsel*), *for Defendants-Appellees Jesus Manuel Guzman and David Hall*.

---

WESLEY, *Circuit Judge*:

The government appeals from orders of the United States District Court for the Northern District of New York (Hurd, *J.*) dismissing the respective indictments of Appellees Jesus Manuel Guzman and David Hall ("Appellees") pursuant to 18 U.S.C. § 2250(a) for traveling in interstate commerce and failing to register and update their sex offender registrations as required by the Sex Offender Registration and Notification Act ("SORNA" or "Act"). Although it rejected all of Appellees' other challenges to SORNA, the district court held that the underlying registration

requirements of 42 U.S.C. § 16913 exceed the authority of Congress to regulate interstate commerce. *United States v. Hall*, 577 F. Supp. 2d 610, 623 (N.D.N.Y. 2008); *United States v. Guzman*, 582 F. Supp. 2d 305, 312 (N.D.N.Y. 2008); *United States v. Hall*, 588 F. Supp. 2d 326, 329 (N.D.N.Y. 2008) (denying reconsideration). We consolidate these cases solely for the purposes of this appeal. We agree with the district court that Appellees' other arguments in support of dismissal lack merit. However, we disagree with the district court's holding that 42 U.S.C. § 16913 exceeds congressional power pursuant to the Commerce Clause of the United States Constitution and therefore reverse the rulings of the district court and reinstate the indictments.

**Background**

*Hall*

On April 3, 2008, the government filed a criminal complaint against David Hall alleging that he traveled in interstate commerce and knowingly failed to register and update his registration as a sex offender under 18 U.S.C. § 2250(a).[1] According to the complaint, Hall pleaded guilty to Sexual Misconduct in violation of N.Y. Penal Law § 130.20 on May 25, 2006, and was sentenced to one year of incarceration. The sentencing judge designated Hall a Level 3 sex offender, meaning that he was required to register as a sex offender with New York and keep that registration up to date. An affidavit that accompanied the April 3, 2008 criminal complaint

---

[1] SORNA became law as Title I of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (codified at 42 U.S.C. §§ 16901 *et seq.*, 18 U.S.C. § 2250). The Act encompasses, but is not limited to, both 42 U.S.C. § 16913, the underlying sex offender registration requirement, and 18 U.S.C. § 2250, which criminalizes failure to register or update registration for those who cross state lines. We will refer to each section individually by its number where it is relevant and at times, for convenience, SORNA as a whole where it is not.

states that, although Hall initially registered as required, an annual registration verification form sent by New York to his registered address in June 2007 was returned by the United States Post Office. According to the affidavit, Hall's whereabouts remained unknown to New York until February or March 2008, when Hall applied for benefits and informed the Cayuga County Department of Health and Human Services that he had been in Charlottesville, Virginia until moving back to Auburn, New York with his girlfriend on February 22, 2008. The affidavit further states that Virginia officials confirmed that Hall did not register as a sex offender in Virginia. A federal grand jury indicted Hall under 18 U.S.C. § 2250(a) on April 9, 2008.

Hall moved to dismiss the indictment on the grounds that SORNA: (1) does not apply in his case because neither New York nor Virginia have implemented the terms of SORNA as required by 42 U.S.C. § 16912, and the United States Attorney General did not make SORNA retroactive; (2) violates the Ex Post Facto and Due Process Clauses as applied to him because it has not been implemented by New York or Virginia; (3) exceeds Congress's power under the Commerce Clause; (3) encroaches on powers reserved to the states by the Tenth Amendment; and (4) violates the congressional non-delegation doctrine.

On September 23, 2008, the United States District Court for the Northern District of New York dismissed the indictment. *Hall*, 577 F. Supp. 2d at 623. The district court rejected Hall's argument that non-implementation of SORNA by New York and Virginia precludes prosecution because, contrary to the defendants' assertions, the Attorney General has specified that SORNA applies to sex offenses predating its enactment regardless of whether SORNA has been implemented by the relevant jurisdictions. *Id.* at 614-15 (citing 28 C.F.R. § 72.3 and 72 Fed.

Reg. 30,228 (May 30, 2007)). The district court also concluded that Hall's ex post facto challenge was misplaced because § 2250 punishes knowing failure to register when moving between states and does not impermissibly increase the punishment for his underlying sex offense conviction. *Id.* at 615-16.

The district court was equally unconvinced by Hall's argument that requiring him to register violated his due process rights because it was impossible for him to have registered under SORNA when the relevant states have not yet implemented the statute's registration requirements. The court reasoned that, regardless of state implementation, Hall "could have fulfilled his obligation to register as a sex offender under SORNA by providing the [existing] Virginia and New York sex offender registries with the required information upon changing his residence." *Id.* at 616.

The district court rejected Hall's Tenth Amendment argument because Hall could not show that either New York or Virginia made any changes to their laws in order to comply with SORNA. *Id.* at 616-17. Because the states did not take the actions required by SORNA, the district court reasoned, their officials were not unconstitutionally commandeered into implementing federal law. *Id.* at 617. The district court further concluded that Congress had not impermissibly delegated its legislative authority to the Attorney General by enacting SORNA because the Act provided the Attorney General with an "intelligible principle" to follow by granting only the "limited authority to determine the retroactive application of SORNA's registration requirements to individuals convicted of sex offenses prior to SORNA's enactment." *Id.* at 617-18.

The district court nevertheless dismissed the indictment. It determined that Congress overstepped its authority to regulate interstate commerce in enacting SORNA. *Id.* at 622. Although the district court held that § 2250(a)—which criminalizes travel in interstate commerce without updating one's registration under SORNA—does not run afoul of the Commerce Clause under *United States v. Lopez*, 514 U.S. 549 (1995), or *United States v. Morrison*, 529 U.S. 598 (2000), *see Hall* at 577 F.2d at 619, it concluded that the *underlying* SORNA registration requirement, 42 U.S.C. § 16913, is unconstitutional because "it lacks a jurisdictional element restricting its application to individuals who travel in interstate commerce." *Hall,* 577 F.2d at 620. Because § 16913 requires registration when changing address, employment, or student status, without regard to state lines, the district court determined that the section was sustainable only if it regulated an activity substantially affecting interstate commerce. The court held it does not. *Id.* at 621-22. The district court then rejected the government's attempt to justify § 16913 via Congress's spending power, reasoning that SORNA's registration requirements were not predicated upon any action being taken by a state. *Id.* at 622. The district court dismissed the indictment because a conviction under § 2250 would necessarily rely on the registration requirement that it had determined was unconstitutional.

*Guzman*

On October 2, 2008, the government filed a superseding indictment in the Northern District of New York alleging that "[f]rom in or about May, 2007 through in or about April, 2008" defendant Jose Manuel Guzman traveled in interstate commerce and knowingly failed to register or update his SORNA registration in violation of 18 U.S.C. § 2250(a). According to a

May 12, 2008 affidavit, following two convictions in New York, Guzman was designated a Level 2 sex offender and required as a matter of New York law to register and to keep his registration up to date. The affidavit further states that a June 2007 annual verification form sent by New York to Guzman's address was returned by the United States Post Office, and in February 2008 the United States Marshals in Syracuse received information indicating that Guzman was residing in Lawrence, Massachusetts. According to the affidavit, Guzman did not register as a sex offender in Massachusetts. He was arrested on April 29, 2008, and federally indicted.

Guzman's case was assigned to the same district judge who had previously dismissed Hall's indictment. Guzman moved for dismissal, and on October 17, 2008, the district court issued a decision dismissing the indictment. As in its decision in *Hall*, the district court rejected all of Guzman's arguments in support of dismissal, except for his argument that § 16913 exceeds Congress's authority under the Commerce Clause. *Guzman*, 582 F. Supp. 2d at 315. The court rejected the government's argument that § 16913 regulates activity that substantially affects interstate commerce in the aggregate, *see Wickard v. Filburn*, 317 U.S. 111 (1942) and *Gonzales v. Reich*, 545 U.S. 1 (2005), because it regulates an activity that is not economic in nature. *Guzman*, 582 F. Supp. 2d at 310-13. Similarly, the court rejected the government's argument regarding the aggregate economic "cost of crime" as foreclosed by the Supreme Court in *Lopez*. *Id.* at 311; *see also Lopez*, 514 U.S. at 563-66. The district court also held that the statute was not saved by the Necessary and Proper Clause as an integral part of a broader regulatory scheme, because "the [Necessary and Proper C]lause may not be used to sustain the regulation of

intrastate activity having an insufficient effect upon interstate commerce if the more general statutory objective is outside the scope of the constitution." *Guzman*, 582 F. Supp. 2d at 313.

**Discussion**

The provisions of SORNA relevant to this appeal are fairly straightforward. Under 42 U.S.C. § 16913(a), a convicted sex offender must register "and keep the registration current, in each jurisdiction where the offender resides, ... is ... employ[ed], [or] is a student." With respect to initial registration, a sex offender must also register in the jurisdiction of conviction if it is not the offender's jurisdiction of residence. *Id.* For initial registration purposes, § 16913(b) provides that the individual must register "before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement" or "not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment." Section 16913(c) requires the registrant to inform at least one of the relevant jurisdictions of all relevant updates to his or her registration information within three days of a "change of name, residence, employment, or student status." The jurisdiction so informed must then share that information with other jurisdictions where the offender is required to register. *Id.*; *see also id.* § 16921(b)(3). Section 16913(d) gives the United States Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before [SORNA's enactment on July 27, 2006] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section."

Under SORNA's criminal enforcement provision, 18 U.S.C. § 2250(a), if an individual

who is required to register knowingly fails to register or keep the registration information current, the offender is subject to a fine, imprisonment, or both. However, in order for criminal liability to attach, the offender must "travel[] in interstate or foreign commerce, or enter[] or leave[], or reside[] in Indian country," or the offender's registration requirement must derive from "a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States." *Id.* § 2250(a)(2).

Other SORNA provisions require jurisdictions to maintain sex offender registries in conformance with the Act, and empower the United States Attorney General to issue guidelines and regulations interpreting and implementing the Act. 42 U.S.C. § 16912(a), (b). SORNA provides for a reduction in federal funding related to law enforcement for those jurisdictions failing to "substantially implement" SORNA. 42 U.S.C. § 16925.

Guzman and Hall make virtually identical arguments urging us to affirm the district court's holding that the national sex offender registration requirements in § 16913 exceed Congress's constitutional authority to legislate pursuant to the Commerce Clause. They further contend that § 2250(a) similarly violates the Commerce Clause. We find neither of these contentions convincing, and are equally unpersuaded by the other constitutional arguments rejected by the district court.

**Commerce Clause**

The Constitution grants Congress the power "[t]o regulate Commerce . . . among the

several States." U.S. Const. art. I, § 8, cl. 3. The current framework for approaching questions of the scope of congressional authority to regulate interstate commerce derives from the Supreme Court's opinion in *United States v. Lopez*, 514 U.S. 549 (1995). *Lopez* broke down the Commerce Clause inquiry into three categories of congressional regulatory authority: (1) "[to] regulate the use of the channels of interstate commerce"; (2) "to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "to regulate those activities having a substantial relation to interstate commerce." *Id.* at 558-59. In *United States v. Morrison*, the Supreme Court provided further guidance regarding the final category, articulating four factors to be weighed in determining whether an activity substantially affects interstate commerce: (1) whether the regulated activity is economic in nature; (2) whether the statute contains an "express jurisdictional element" linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) attenuation of the link between the regulated activity and interstate commerce. 529 U.S. 598, 611-12 (2000) (internal quotation marks omitted). Moreover, in *Morrison*, the Supreme Court again firmly rejected the proposition that "Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

We have no difficulty concluding that § 2250(a) is a proper congressional exercise of the commerce power under *Lopez*. Section 2250(a) only criminalizes a knowing failure to register when the offender is either required to register by reason of a federal law conviction or "travels in

interstate or foreign commerce, or enters or leaves, or resides in, Indian country." These requirements stand in clear contrast to the lack of a jurisdictional predicate in the statutes at issue in *Lopez* and *Morrison* and are clearly intended to provide just such a jurisdictional nexus. According to the statute's explicit terms, a sex offender whose underlying conviction was obtained pursuant to state law and who never crosses state lines, international borders, or the boundaries of Indian country, cannot be criminally liable for failure to comply with SORNA. However, a convicted sex offender who travels interstate may incur criminal liability under the statute. Interstate travel inherently involves use of the channels of interstate commerce and is properly subject to congressional regulation under the Commerce Clause. Moreover, *Lopez* explicitly acknowledges Congress's power to regulate persons traveling in interstate commerce. *Lopez*, 514 U.S. at 558; *see also United States v. Dixon*, 551 F.3d 578, 583 (7th Cir. 2008), *cert. granted on other grounds sub nom. Carr v. United States*, 130 S. Ct. 47 (2009). It comes as no surprise, then, that we join every other circuit that has examined the issue in concluding that § 2250(a) is a legitimate exercise of congressional Commerce Clause authority. *See United States v. George*, 579 F.3d 962, 966-67 (9th Cir. 2009); *United States v. Whaley*, 577 F.3d 254, 258 (5th Cir. 2009); *United States v. Gould*, 568 F.3d 459, 470-72 (4th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1210-11 (11th Cir. 2009); *Dixon*, 551 F.3d at 583-84; *United States v. Hinckley*, 550 F.3d 926, 940 (10th Cir. 2008); *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008).

The analysis of the constitutionality of SORNA's underlying registration requirement, § 16913, is more difficult, but ultimately leads to the same result. Appellees contend that

§ 16913 cannot be justified under the Commerce Clause because its scope is overly broad and may regulate purely intrastate activities by requiring sex offenders to register in the first place and to keep current in their registrations. However, § 16913 does not exist in a vacuum. Sections 2250 and 16913 "were enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, and are clearly complementary: without § 2250, § 16913 lacks federal criminal enforcement, and without § 16913, § 2250 has no substance." *Whaley*, 577 F.3d at 259 (internal citation omitted).

SORNA was preceded by the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act of 1994, which conditioned federal funding on states' enactment of sex offender registration laws. *See* 42 U.S.C. § 14071(g)(2). "By the time that SORNA was enacted in 2006, every State and the District of Columbia had enacted a sex offender registration law," *Gould*, 568 F.3d at 464, and SORNA does not penalize failure to register so long as a registrant previously convicted of a state sex offense remains in-state. Thus, with SORNA, Congress's goal was not simply to require sex offenders to register or to penalize the failure to do so, but rather to "establish[] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. In other words, Congress wanted to make sure sex offenders could not avoid all registration requirements just by moving to another state.

The Necessary and Proper Clause to the Constitution gives Congress the power to "make all laws which shall be necessary and proper" for its use of the commerce power. U.S. Const., art. 1, § 8, cl. 18. "Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect

interstate commerce." *Raich*, 545 U.S. 1, 35 (2005) (Scalia, J., concurring); *see also, e.g.*, *Shreveport Rate Cases*, 234 U.S. 342, 353 (1914). Requiring sex offenders to update their registrations due to intrastate changes of address or employment status is a perfectly logical way to help ensure that states will more effectively be able to track sex offenders when they do cross state lines. To the extent that § 16913 regulates solely intrastate activity, its means "are 'reasonably adapted' to the attainment of a legitimate end under the commerce power," *Raich*, 545 U.S. at 37 (Scalia, J., concurring), and therefore proper. *See Whaley*, 577 F.3d at 260-61; *Ambert*, 561 F.3d at 1212; *United States v. Howell*, 552 F.3d 709, 714-15 (8th Cir. 2009).

### Non-delegation

Appellees further contend that, in § 16913, Congress unconstitutionally delegated its legislative authority to the United States Attorney General. They argue that SORNA impermissibly grants the Attorney General congressional legislative authority because § 16913(d) delegates to the Attorney General the authority to specify the applicability of SORNA to sex offenders convicted before July 27, 2006, and § 16917(b) gives the Attorney General the power to prescribe rules to notify sex offenders who are not in custody or awaiting sentencing of their registration requirement.

As a preliminary matter, a circuit split exists about whether § 16913(d) does in fact authorize the Attorney General to determine the "retroactive" applicability of SORNA to sex offenders convicted prior to its enactment, or whether it only allows the Attorney General to determine how, as a practical matter, SORNA—effective with respect to all sex offenders from its enactment—should be implemented with respect to those convicted before SORNA was

enacted. *See United States v. Cain*, 583 F.3d 408 (6th Cir. 2009) (former); *Hinckley*, 550 F.3d at 929-35 (latter); *United States v. Hatcher*, 560 F.3d 222, 226-29 (4th Cir. 2008) (former); *May*, 535 F.3d at 915-19 (latter); *United States v. Madera*, 528 F.3d 852, 857-59 (11th Cir. 2008) (per curiam) (former).[2] Resolution of the issue presented by this circuit split, however, does not alter the outcome of the present cases. As discussed in greater detail below, if we interpret § 16913(d) narrowly, then defendants lack standing to challenge § 16913(d)'s delegation of authority; if, on the other hand, we interpret § 16913(d) broadly, defendants would have standing, but the merits of their arguments would not prevail. In either scenario, defendants' delegation arguments do not alter our conclusion that defendants' indictments should be reinstated.

According to those circuit courts that narrowly interpret the scope of § 16913(d), neither

---

[2] Section 16913(d) reads, in its entirety, "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section." Subsection (b) provides requirements for initial registration, i.e., it must be done "before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement," or "not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment." We do not decide whether § 16913(d) delegates to the Attorney General the authority to determine whether SORNA applies to sex offenders convicted prior to enactment, or whether it merely gives the Attorney General the specific authority to prescribe rules regarding SORNA's application to all, including those convicted of a sex offense prior to enactment, who are unable to initially register according to the terms of subsection (b).

It is possible that the Supreme Court will answer this question for us shortly, as it recently granted certiorari in *Carr v. United States*, No. 08-1301, 130 S. Ct. 47 (2009), in order to address whether § 2250 permits the conviction of individuals for failure to register where the underlying offense and travel in interstate commerce both occurred prior to SORNA's enactment, as well as any ex post facto problem that such an application might raise. However, we do not need to know whether § 16913 or the Attorney General's regulations make the registration requirement apply to those convicted of an underlying offense prior to SORNA's enactment in order to conclude that SORNA does not include an improper delegation of legislative authority.

Guzman nor Hall would have standing to challenge § 16913(d)'s delegation of authority. *Hinckley*, 550 F.3d at 939; *May*, 535 F.3d at 920-21. These circuit courts interpret § 16913(d) as delegating authority to the Attorney General only with respect to those sex offenders who were unable to comply with § 16913(b)'s initial registration requirements. *Hinckley*, 550 F.3d at 939; *May*, 535 F.3d at 918-19. According to these courts, § 16913(d) does not commit any authority to the Attorney General with regard to sex offenders who were convicted prior to SORNA's enactment and who *already initially registered* as sex offenders with their respective states; therefore, according to these courts, defendants who have already initially registered as sex offenders lack standing to challenge § 16913(d)'s delegation of authority to the Attorney General. *Hinckley*, 550 F.3d at 939; *May*, 535 F.3d at 920-21. Thus, if we followed the lead of the Eighth and Tenth Circuits and narrowly interpreted the scope of § 16913(d), neither Guzman nor Hall would have standing to challenge § 16913(d)'s delegation of authority because both of them had already initially registered as sex offenders with their respective states before SORNA's enactment. In sum, applying this narrow interpretation of § 16913(d), Guzman and Hall's delegation arguments would not deter us from reinstating their indictments.

Likewise, even if we were to interpret § 16913(d) broadly, i.e., even if we were to interpret § 16913(d) as granting the Attorney General the broad authority to determine whether SORNA should apply to any sex offenders convicted before its enactment, the present defendants' delegation arguments would fail. A delegation is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105

(1946). In other words, Congress needs to provide the delegated authority's recipient an "intelligible principle" to guide it. *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928); *see also Mistretta v. United States*, 488 U.S. 361, 372-73 (1989). The Attorney General's authority under SORNA is highly circumscribed. SORNA includes specific provisions delineating what crimes require registration, 42 U.S.C. § 16911; where, when, and how an offender must register, *id.* § 16913; what information is required of registrants, *id.* § 16914; and the elements and penalties for the federal crime of failure to register, 18 U.S.C. § 2250.[3] *See Ambert*, 561 F.3d at 1214. If § 16913(d) gives the Attorney General the power to determine SORNA's "retroactivity," it does so only with respect to the limited class of individuals who were convicted of covered sex offenses prior to SORNA's enactment; the Attorney General cannot do much more than simply determine whether or not SORNA applies to those individuals and how they might comply as a logistical matter. If, on the other hand, § 16913(d) gives the Attorney General the authority only to *implement* SORNA with respect to all sex offenders, whether or not they were convicted pre-enactment, then the scope of that authority is even more circumscribed.[4] *See, e.g.*, Applicability of the Sex Offender Registration and Notification Act,

---

[3] Appellees do not appear to challenge 42 U.S.C. § 16912(b), which directs the Attorney General to "issue guidelines and regulations to interpret and implement" SORNA. This is the broadest grant of authority in the Act. However, in light of the specificity of SORNA's goal to establish a "comprehensive national system for the registration of [sex] offenders," 42 U.S.C. § 16901, and the Act's substantive provisions, consideration of § 16912(b) would not change our analysis. *See, e.g.*, *Mistretta*, 488 U.S. at 372-73.

[4] As already discussed, at least two circuit courts have held that defendants would not even have standing to challenge this more circumscribed delegation of authority. *See Hinckley*, 550 F.3d at 939; *May*, 535 F.3d at 920-21. Nevertheless, it is worth noting that even a less circumscribed delegation of authority, as discussed above, would survive scrutiny.

72 Fed. Reg. 8,894, 8,896 (Feb. 28, 2007) ("Considered facially, SORNA requires all sex offenders who were convicted of sex offenses in its registration categories to register in relevant jurisdictions, with no exception for sex offenders whose convictions predate the enactment of SORNA."). The Supreme Court has upheld much broader delegations than these. *See Mistretta*, 488 U.S. at 372-73.

### Non-implementation by New York, Massachusetts, and Virginia

Appellees argue that their indictments warrant dismissal because New York, Massachusetts, and Virginia have not implemented SORNA at the state level. However, as a panel of this Court recently held, SORNA creates a federal duty to register with the relevant existing state registries regardless of state implementation of the specific additional requirements of SORNA. *United States v. Hester*, Nos. 08-4665-cr(L), 08-4667-cr(con), — F.3d —, 2009 WL 4826933, at *5-6 (2d Cir. Dec. 16, 2009) (per curiam); *see also United States v. Brown*, 586 F.3d 1342, 1347-49 (11th Cir. Nov. 5); *United States v. George*, 579 F.3d at 965; *United States v. Gould*, 568 F.3d 459, 463-66 (4th Cir. 2009). Furthermore, the Attorney General has the authority both to "issue guidelines and regulations to interpret and implement [SORNA]," 42 U.S.C. § 16912(b), and to "specify the applicability of the requirements of [SORNA] to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction," *id.* § 16913(d). The Attorney General has also issued regulations clarifying that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."[5] 28 C.F.R. § 72.3; *see also* National

---

[5] The Ninth Circuit recently held that the application of SORNA's registration requirements with respect to juveniles who were adjudicated delinquent due to a sex offense

Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,046-47 (July 2, 2008).

There is no express condition in the text of SORNA that the applicability of the registration requirement should depend upon state implementation of SORNA's terms. Nor is there any link between a state's obligation to comply with the statute—enforced via the threat of withheld funding—and an individual sex offender's independent duty to register. *See Hester*, 2009 WL 4826933, at *5-6; *Gould*, 568 F.3d at 463-65. Moreover, even if SORNA is unclear by its own terms, the Attorney General has specified that an offender's obligation to register is not contingent on any jurisdiction's implementation of SORNA. 73 Fed. Reg. at 38,046, 38,063-64. Appellees do not and cannot contend that New York, Massachusetts, or Virginia did not have a functional sex offender registry during the relevant time periods.

Appellees further argue that, if SORNA applies to them in spite of the relevant states' non-implementation of its terms, then to apply it would violate the Ex Post Facto and Due Process Clauses. However, both Hall and Guzman were convicted of traveling interstate and failing to register, and in both of their cases the travel and failure to register occurred after SORNA's enactment and the effective date of the regulations indicating that SORNA applies to all sex offenders. *See* 28 C.F.R. § 72.3. There is, therefore, no ex post facto problem with their convictions. *See Weaver v. Graham*, 450 U.S. 24, 30-31 (1981). Moreover, the states in question all had registries in effect prior to Appellees' travel and failure to register; Appellees

prior to SORNA's enactment violates the Ex Post Facto Clause. *United States v. Juvenile Male*, 581 F.3d 977, 993-94 (2009). We do not need to address that question with respect to Hall or Guzman, as neither contends that he was a juvenile when convicted of his underlying sex offense.

had notice of registration requirements and, by registering, could have complied with both federal and state laws. *See Hester*, 2009 WL 4826933, at *5; *Hinckley*, 550 F.3d at 939.

## Commandeering

Although Appellees do not elaborate on appeal with respect to their argument that SORNA commandeers state officials into administering federal law in violation of the Tenth Amendment, *see Printz v. United States*, 521 U.S. 898, 925-26 (1997), they did make this argument in the district court and on appeal have asked us to consider it by generally reasserting all claims raised in their motions to dismiss. However, as the district court noted with respect to Hall, Appellees have not shown that any of the states involved in their interstate travel have taken any steps to implement SORNA. *Hall*, 577 F. Supp. 2d at 617. Appellees' Tenth Amendment argument therefore necessarily fails.

## Conclusion

Appellees' cases are hereby consolidated solely for the purposes of this appeal, and the district court's orders of (1) September 23, 2008, dismissing the indictment in *United States v. Hall*; (2) October 17, 2008, dismissing the superseding indictment in *United States v. Guzman*; and (3) December 4, 2008, denying the government's motion for reconsideration in *United States v. Hall*, are hereby REVERSED, the indictments REINSTATED, and the cases REMANDED to the district court to conduct further proceedings in accordance with this opinion.